# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

     Respondent,

    v.

ORESTE LAZAR DUANES-
GONZALES,

     Appellant.

No. 70822-8-I

DIVISION ONE

UNPUBLISHED

FILED: November 10, 2014

Cox, J. — Oreste Duanes-Gonzales appeals his conviction of kidnapping in the first degree. He contends that insufficient evidence supports his conviction because the restraint employed in the kidnapping was "merely incidental" to his separate conviction of robbery in the first degree. As we recently held in State v. Phuong[1] and State v. Grant,[2] there is no due process right to be convicted of kidnapping only where the restraint is "not incidental" to another crime. And there is nothing in the controlling statutes to show a legislative intent supporting this argument. Accordingly, we reject this argument and affirm his conviction. However, we remand for correction of an apparent scrivener's error in the judgment and sentence to reflect the sentencing court's treatment of his convictions for robbery and kidnapping of the same victim as the same criminal conduct.

---

[1] 174 Wn. App. 494, 508, 299 P.3d 37 (2013), petition for review stayed (Wash. Sup. Ct. September 3, 2014).

[2] 172 Wn. App. 496, 498, 301 P.3d 459 (2012), review denied, 177 Wn.2d 1021 (2013).

The State charged Duanes-Gonzales with four counts of robbery and one count of kidnapping in the first degree. The kidnapping charge and the first degree robbery charge that are at issue in this appeal arose from an incident involving Marques Alfonzo that occurred on September 28, 2012. The other convictions are not before us.

On that afternoon, Alfonzo was on his way to meet his wife for a pregnancy-related appointment. As Alfonzo was pulling out of his driveway in his car, he stopped to allow two male pedestrians to pass behind him. One of the pedestrians approached his car and asked for directions to the neighborhood school. The other person had his back turned toward Alfonzo. Alfonzo thought it was "a little funny because you could pretty much see the school" from his driveway, but provided directions nonetheless. As he did so, the other pedestrian turned around and pointed a semiautomatic gun at him through Alfonzo's open window.

The man with the gun told Alfonzo to get into the passenger's seat. Alfonzo tried to get out of the car to walk around to the passenger's side, but the man with the gun told him "no" and directed him to move over the gearshift. The man who initially asked for directions got into the driver's seat, while the man holding the gun got into the backseat behind the driver's seat. Alfonzo recognized the driver, Oreste Duanes-Gonzales, as someone he had known in the past but had not seen in more than 10 years. Alfonzo told the men to "just take the car," but neither responded.

Duanes-Gonzales drove around Alfonzo's residential neighborhood while the man in the backseat held the gun and pointed it at Alfonzo. As they drove, Alfonzo pleaded with the men and told them "hundreds of time" that he and his wife were expecting a baby. They did not respond to his pleas except to tell him to "empty your pockets." When they were several blocks away from Alfonzo's house, Duanes-Gonzales slowed down to let Alfonzo out of the car. Before letting him out, the men demanded "everything [he] had." They took Alfonzo's wallet, mobile phone, jewelry, and his shoes. The men directed Alfonzo to walk straight for five minutes and then turn the corner and said his car would be parked there. Alfonzo complied and found his car, with the doors open and the engine running. Alfonzo drove back to his house and used a neighbor's telephone to call the police.

Alfonzo later identified Duanes-Gonzales in a photo montage. Duanes-Gonzales's fingerprint was on the door of Alfonzo's car. In the search of a residence associated with Duanes-Gonzales, police also discovered several items reported missing by Alfonzo as well as a handgun.

In his testimony at trial, Duanes-Gonzales admitted he had been in Alfonzo's car and that he possessed several items belonging to Alfonzo. Duanes-Gonzales explained that he had given Alfonzo $550 worth of marijuana upon Alfonzo's promise to pay him later. Duanes-Gonzales claimed that Alfonzo willingly provided his personal property as collateral because he did not have the money to pay for the marijuana.

3

The jury found Duanes-Gonzales guilty of all counts as charged. The court imposed a standard range sentence.

Duanes-Gonzales appeals.

## SUFFICIENCY OF THE EVIDENCE

The primary challenge of Duanes-Gonzales is that under the incidental restraint doctrine there was insufficient evidence to prove kidnapping of Alfonzo separate from robbery.

As charged in this case, the State had to prove beyond a reasonable doubt that Duanes-Gonzales committed kidnapping in the first degree by showing that he or an accomplice abducted someone with intent to facilitate the commission of a robbery.[3] To "abduct" is to restrain a person by using or threatening to use deadly force.[4] And "to restrain" is to restrict movement in a manner that interferes substantially with a person's liberty.[5]

In reviewing a claim of insufficient evidence, we review the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found beyond a reasonable doubt the elements of the charged crime.[6] We weigh all reasonable inferences from the evidence in the State's favor and most strongly against the defendant.[7]

Duanes-Gonzales does not challenge the sufficiency of the evidence supporting any of the statutory elements of kidnapping. Instead, he relies on the

---

[3] RCW 9A.40.020.
[4] RCW 9A.40.010(1).
[5] RCW 9A.40.010(6).
[6] State v. Brown, 162 Wn.2d 422, 428, 173 P.3d 245 (2007).
[7] Id.

analysis of Division Two of this court in State v. Korum,[8] and State v. Berg.[9] He contends that his kidnapping conviction violates due process because it involved restraint that was merely incidental to the robbery committed at the same place and time.

We disagree. In two recent decisions, Division One has declined to follow Korum and rejected Division Two's interpretation of the Washington Supreme Court's opinion in State v. Green.[10] Tracing the origins of the incidental restraint language in Green and the decisional law in kidnapping-merger cases, we reached the following conclusions:

> First, a defendant's conviction of a restraint-based offense is not subject to reversal on Fourteenth Amendment due process grounds based upon a claim that the restraint involved in the offense was "incidental" to another charged offense. And, second, because our state law does not encompass the kidnapping merger rule, the defendant may lawfully be punished for both offenses.[11]

Duanes-Gonzales acknowledges this precedent in a footnote, but points out that the supreme court has accepted review in Berg to resolve the issue of whether in a prosecution for first degree robbery and first degree kidnapping, the evidence of kidnapping is constitutionally insufficient if it shows that restraint of the victim was incidental to the commission of the robbery. We conclude that regardless of whether the supreme court accepts or rejects the analysis in Berg

---

[8] 120 Wn. App. 686, 86 P.3d 166 (2004), rev'd on other grounds, 157 Wn.2d 614, 141 P.3d 13 (2006).
[9] 177 Wn. App. 119, 310 P.3d 866 (2013), review granted, 179 Wn.2d 1028 (2014).
[10] 94 Wn.2d 216, 616 P.2d 628 (1980).
[11] Phoung, 174 Wn. App. at 532; see also Grant, 172 Wn. App. at 505-06 (incidental nature of a crime is relevant only to double jeopardy analysis and Green does not impose a non-statutory element upon kidnapping requiring proof that restraint is non-incidental to an accompanying crime in order to satisfy due process).

that "Green requires application of the incidental restraint doctrine" in this context, Duanes-Gonzales's challenge to his kidnapping conviction still fails.[12]

The facts here are unlike those in cases where courts have characterized the evidence of restraint as "incidental" to the commission of a robbery. For instance, in Korum, the defendant and his accomplices restrained victims at their residences to facilitate home invasion robberies.[13] Likewise, in Berg, the defendants restrained the robbery victim at gunpoint in his workshop where they first encountered him while they took property from the workshop and from his home at the same location.[14]

Here, in contrast, the forcible restraint of Alfonzo began before and continued through the robbery. Moreover, the restraint involved moving him some distance from the driveway of his home where Duanes-Gonzales first encountered him. Duanes-Gonzales kidnapped Alfonzo when he and his accomplice forced him into the passenger's seat and then drove around while holding him at gunpoint. While still restraining Alfonzo's movement during the drive, they robbed him. While these events overlapped to some extent, they did not completely take place at the same time. Finally, Duanes-Gonzales did not merely restrain Alfonzo for the period of time necessary to rob him. Alfonzo testified that Duanes-Gonzales drove him around the neighborhood while he tried to reason and plead with the two men. Although the evidence did not establish either the exact duration of the drive or the distance travelled, Alfonzo estimated that the place where Duanes-Gonzales let him out of the car was a 20 to 25

---

[12] Berg, 177 Wn. App. at 131.
[13] 120 Wn. App. at 690-92.
[14] 177 Wn. App. at 123-24, 136-38.

minute walk from his house. So, viewing the evidence in the light most favorable to the State, it was sufficient to convict Duanes-Gonzales of kidnapping.

## SCRIVENER'S ERROR

Duanes-Gonzales next contends, and the State concedes, that the trial court erred when it failed to indicate on the judgment and sentence that the robbery and kidnapping counts involving Alfonzo encompassed the same criminal conduct. The trial court did not make an explicit finding on same criminal conduct at sentencing, but the record indicates that the court accepted the State's pretrial position that the two counts involved the same criminal conduct. And the court's calculation of Duanes-Gonzales's offender score of 7 reflects that the court treated the two counts as one for purposes of the offender score calculation. However, the court failed to check the box in section 2.1(i) of the judgment and sentence to indicate its finding that the two counts constitute the same criminal conduct.

We affirm the conviction of kidnapping. We remand to the trial court for correction of the scrivener's error in the judgment and sentence.

_____Cox, J._____

WE CONCUR:

_____          _____

7